IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CICI ENTERPRISES, LP and<br>YES CAPS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TLT HOLDINGS, LLC and<br>TODD ADAMS,<br><br>    Defendants. | No. 3:21-cv-02121-S-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs Cici Enterprises, LP and Yes Caps, LLC's Motion for Summary Judgment ([ECF No. 38](ECF No. 38)) and Motion to Strike Privileged Settlement Communications ([ECF No. 44](ECF No. 44)). As a preliminary matter, the Court GRANTS Plaintiffs' Motion to Strike pursuant to [Federal Rules of Evidence 408(a)](Federal Rules of Evidence 408(a)). And after considering the motion, record, and applicable law, the Court recommends the District Judge GRANT Plaintiffs' Motion for Summary Judgment.

## I.   Background

Plaintiff Cici Enterprises, LP (CE), the national franchisor of the Cici's-brand of franchised restaurants operating throughout the United States, grants franchises to certain persons under written franchise agreements with a limited license to use various federally-registered trademarks (the "Cici's Marks"). Br.

1

Supp. 2-3 (ECF No. 39). Plaintiff Yes Caps, LLC owns the Cici's Marks and licenses them to CE, which in turn sublicenses them to its franchisees for use solely in connection with their operation of Cici's-brand restaurants pursuant to their agreement. *Id.* at 3.

On October 30, 2018, Defendant TLT Holdings LLC (TLT) entered a written agreement with CE for the right to operate a franchised Cici's-brand restaurant in Texarkana, Texas, and to use CE's "proprietary system" and the Cici's Marks in connection with its operation of the restaurant. Br. Supp. Ex. J (franchise agreement) (ECF No. 40-9). TLT agreed to pay CE a continuing royalty fee based on a percentage of its franchised restaurant's net sales. *Id.* at 4-5. TLT also agreed to purchase products and supplies from approved suppliers, such as CE-affiliated supplier JMC Restaurant Distribution, LP (JMC), and promptly pay those approved suppliers all amounts owed. *Id.* at 5. Defendant Todd Adams, TLT's sole member, personally guaranteed TLT's obligations under the franchise agreement. Adams Dep. (ECF No. 40-10).

The original term of the franchise agreement was set to expire on November 5, 2026. *Id.* But the franchise agreement gave CE the right to terminate—effective immediately upon written notice—if TLT failed to pay past due amounts owed to CE or its affiliates. *Id.* at 5. TLT agreed that, in the event of a termination, it would immediately:

> (1) cease operations at the formerly-franchised restaurant; (2) de-identify the formerly-franchised restaurant as being, or having been, associated with [CE] or the Cici's® brand; (3) cease using the Cici's

> Marks and name; (4) return to [CE] all confidential and proprietary information, including the operations manuals; (5) and pay to [CE] and its affiliates all amounts due and owing.

Br. Supp. Ex. J § XVIII. TLT also agreed to not compete with CE, if the contractual relationship terminated. *Id.*

According to Plaintiffs, TLT struggled to make payments to CE and its affiliates. *Id.* At the onset of the COVID-19 pandemic in the spring of 2020, CE deferred certain payments of royalty fees and products owed by all franchisees, including TLT. *Id.* at 14. In May 2021, CE offered various options to all its franchisees who still owed the deferred payments. *Id.* at 8. TLT did not accept any of CE's proposed options, and instead offered "15 cents on the dollar for royalties and something different for [product payments]." Adams Dep. 0103-04, 101:16-102:6.

CE sent TLT demand letters on May 28, *id.* Ex. N (ECF No. 40-14), and June 15, 2021. *Id.* Ex. O. (ECF No. 40-15). Then, on August 17, CE sent TLT and Adams a written default notice for TLT's failure to pay CE and JMC. *Id.* Ex. P. (ECF No. 40-16). The default notice stated that Defendants had 5 days to pay deferred royalty fees of $16,982.36 and deferred product payments of $23,528.41, or CE would terminate the franchise agreement. *Id.* On August 22, six days after receiving the default notice, Adams emailed CE indicating that he was in the hospital but would respond by August 27 after consulting his attorney. *Id.* at Ex. Q (ECF No. 40-17). In response, CE extended the deadline to the next day, August 23, at 5 P.M. *Id.* Defendants did not cure, so, on August 27, CE sent Defendants a

written notice terminating the franchise agreement effective immediately. *Id.* Ex. R. (ECF No. 40-18). TLT did not cease operations at its Texarkana restaurant and continued to identify as a Cici's-brand restaurant and use the Cici's Marks.

Accordingly, on September 4, Plaintiffs filed this action, alleging trademark infringement, unfair competition, and breach of contract against Defendants. Compl. 8-11 (ECF No. 1). Plaintiffs sought injunctive relief, specific performance, damages, and litigation costs and expenses. *Id.* at 11-12. Subsequently, Adams sent CE checks for the past due amounts in "full accord and satisfaction." Br. Supp. 11. CE returned the checks. *Id.*

Plaintiffs allege that TLT continued to operate the restaurant using the Cici's Marks, and sourced products from an unapproved food distributor until September 19. *Id.* at 10-11. On October 7, the parties entered a stipulated preliminary injunction order, enjoining defendants from using the Cici's Marks and requiring Defendants to de-identify the shuttered restaurant of all the Cici's Marks and other indicia within 30 days. *See* Ord. (ECF No. 23). Defendants allegedly did not comply with this order until the end of December 2021. Br. Supp. 11. And, Plaintiffs have not been able to open a new franchised restaurant in Texarkana since. *Id.*

On March 29, 2022, Plaintiffs filed a motion for summary judgment on all their asserted claims. Defendants filed a response. Plaintiffs filed their reply, as well as a motion to strike certain evidence submitted by Defendants in support of their motion. Both motions are ripe for determination.

## II.     Preliminary Matters

As an initial matter, Plaintiffs move to strike from the summary judgment record certain emails submitted as evidence in support of Defendants' response to Plaintiffs' motion. *See* Mot. to Strike (ECF No. 44). Plaintiffs contend the emails constitute privileged settlement communications between Adams and Plaintiffs' counsel that are inadmissible under Rule 408(a) of the Federal Rules of Evidence. Defendants did not respond.

Under the Federal Rules of Evidence, "conduct or statements made in compromise negotiations regarding [a] claim" are "not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of [the] claim." Fed. R. Evid. 408(a); *cf.* Fed. R. Evid. 408(b) (authorizing courts to "admit this evidence for another purpose"). And because the Court may only consider admissible evidence in the summary judgment context, it may not consider evidence of the parties' settlement negotiations to defeat a summary judgment motion. *See C.R. England & Sons, Inc. v. Atchison, Topeka & Santa Fe Ry. Co., 924 F. Supp. 757, 761 (N.D. Tex. 1996)* (Sanders, J.); *see also McCloud v. McDonough*, 2022 WL 1230303, at *2 (N.D. Tex. Feb. 4, 2022) (Rutherford, J.) (striking portions of summary judgment response that describe confidential settlement negotiations), *rec. accepted*, 2022 WL 682747 (N.D. Tex. Mar. 8, 2022) (Starr, J.).

In their response to Plaintiffs' summary judgment motion, Defendants present a string of emails between Adams and Plaintiffs' counsel to demonstrate a

triable issue of fact exists as to whether the franchise agreement and Defendants' license to use the Cici's Marks were, in fact, terminated and to support their equitable estoppel defense. *See* Resp. 4-7. On their face, however, the emails show Adams and Plaintiffs' counsel specifically discussed settlement of the parties' disputed claims, and they exchanged these messages after Plaintiffs sent their letter terminating the franchise agreement. *Id.* Especially in the absence of any argument by Defendants that the emails are not privileged settlement communications offered to disprove liability for Plaintiffs' claims, the Court finds the emails are inadmissible, and therefore cannot be considered as evidence to defeat Plaintiffs' motion for summary judgment.

Plaintiffs' Motion to Strike is GRANTED and all evidence of and reference to the privileged settlement communications—including Defendants' Appendix pages 141-151, 154—is stricken from the summary judgment record.

### III. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant can satisfy its burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims and

defenses upon which the movant bears the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986)). This means the movant must demonstrate there are no genuine and material disputes and that it is entitled to summary judgment as a matter of law. *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citations omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir. 1986)).

The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for

summary judgment." *Id.* (first quoting *Ragas*, 136 F.3d at 458; then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

A. Plaintiffs are entitled to summary judgment on their breach of contract claims.

Under Texas law,[1] a party asserting a breach of contract claim must prove: "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *Kellermann v. Avaya, Inc.*, 530 F. App'x 384, 388 (5th Cir. 2013); *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (applying Texas law). Plaintiffs here have met their burden of establishing beyond peradventure each element of their breach of contract claims.

First, there is no dispute that the written franchise agreement between CE and TLT, *see* Br. Supp. Ex. J (ECF No. 40-10), and Adams's personal guaranty in writing of TLT's obligations under that agreement, *see* Adams Dep. 124:14-126:6, are valid, enforceable contracts. Second, there is no dispute that CE fully performed under the franchise agreement, as CE provided TLT with proprietary materials, performed quality inspections, developed marketing materials, scheduled training programs, and granted TLT a limited license to use the Cici's Marks. *See* Hetsel Decl. ¶¶ 8-9. (ECF No. 40-5).

---

[1] There is no dispute that that the franchise agreement contains a valid choice of law provision stating that Texas law applies. *See* Appx Supp. Ex. J § XIX.H.

Third, Plaintiffs established that TLT breached the franchise agreement and Adams failed to perform under the guaranty. The franchise agreement states that "each of the obligations described in this Agreement is a material and essential obligation." Br. Supp. Ex. J § XVII. (ECF No. 40-6). Among other things, the franchise agreement requires TLT to pay CE weekly royalty fees, *see id.* § IV ¶ B, and to order and pay for supplies from approved suppliers, including JMC. *Id.* § VII. Adams admitted at his deposition that TLT breached the franchise agreement when it failed to timely pay royalty fees and amounts owed for delivered products. *See id.* Ex. P (default notice) (ECF No. 40-16); Adams Dep. 89:13-90:2, 94:10-14. (ECF No. 40-9). Because TLT did not timely pay the fees and amounts owed, CE sent Adams a default notice and two demand letters under the guaranty. *See* Br. Supp. Ex. P. The default notice alerted Adams to the deficiencies and gave him an opportunity to cure by tendering the amounts due to CE and JMC. *Id.* But Adams did not cure TLT's default. *Id.* Ex. R (termination notice) (ECF No. 40-18). Defendants thus breached their agreements with CE. *See Mays v. Pierce,* 203 S.W.3d 564, 575 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) ("A breach [of contract] occurs when a party fails or—refuses to do something he has promised to do."); *see also 7-Eleven Inc. v. Puerto Rico-7 Inc.,* 2009 WL 4723199, at *5–6 (N.D. Tex. Dec. 9, 2009) (concluding franchise agreement properly terminated where (i) franchisor issued a default notice providing cure period required by agreement and demanding that all defaults be cured to avoid termination and (ii) franchisee failed to cure all defaults within the cure period).

Defendants argue that they complied with their obligations by "tendering payment to Plaintiffs' mandated food distributer, JMC," and by engaging "in negotiations with [Plaintiffs' counsel]." Resp. 5. Although Defendants outline the specifics of their negotiations with Plaintiffs' counsel, evidence of the parties' privileged settlement communications is inadmissible, and the Court struck this evidence from the summary judgment record. Moreover, there is no evidence that Adams tendered payment to CE during the cure period. Instead, he only offered to make a payment after Plaintiffs filed this lawsuit. Adams Dep. 122:24-25–123:1-25 (ECF No. 40-9). And although Adams later sent CE checks for the past due amounts in "full satisfaction of all debts owed in connection with the agreement," *id.* 123:19-25, Plaintiffs "did not accept that those checks sufficed as full accord and satisfaction . . . [so they] returned those checks to [Adams]." Hetsel Decl. ¶¶ 6-7. (ECF No. 40-19). Therefore, Defendants never cured their breach of the contracts. *See Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146 (5th Cir. 1982) ("Mutual assent of the parties to settlement of a dispute is a requirement for an accord and satisfaction, and the creditor must fully understand that the amount tendered is conditioned as full disposition of the underlying obligation.")

Lastly, CE incurred actual damages because of Defendants' breaches. In support of their motion, Plaintiffs rely on the affidavit of Eric Hopkins, the Vice President of Financial Planning & Analysis for CE, *see* Hopkins Decl. ¶ 1 (ECF No. 40-20), and Adams's admissions during his deposition. *See* Adams Dep. 89:9-90:2; Br. Supp. 14. Adams does not dispute that Defendants owe $16,982.36 in

past due royalty fees and $23,528.41 in past due amounts for products. *See* Adams Dep. 89:9-90:2, 93:13-94:14; Br. Supp. 14; Hopkins Decl. ¶¶ 4-6. And, but for the breach, CE would have received the outstanding $40,510.77. Therefore, CE suffered actual damage from the breaches. *See Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App. 2010) ("The general rule in a breach-of-contract case is that damages should put the plaintiff in the same economic position he would have been in had the contract been performed.")

Therefore, Plaintiffs have met their burden and the Court should grant summary judgment in Plaintiffs' favor on their breach of contract claims.

### B. Plaintiffs also are entitled to summary judgment on their Lanham Act claims for trademark infringement and unfair competition.

"Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement, e.g., the likelihood of confusion." *Mission Pharmacal Co. v. Virtus Pharm., LLC*, 23 F. Supp. 3d 748, 759 (W.D. Tex. 2014). "As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) (citing *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009-10 (5th Cir. 1975)).

Under the Lanham Act, "a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.

11

2008) (citations omitted). Infringement is established if a person "uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* (quoting *Boston Prof'l Hockey Ass'n Inc.*, 510 F.2d at 1009-10); *see* 15 U.S.C. § 1114.

    Defendants do not dispute that the Cici's Marks are registered, owned, and legally protected by Plaintiffs. *See* Ex. A (Complaint) (ECF No. 40-1). Nor do they dispute that Defendants used the Cici's Marks in commerce in connection with the sale of goods after Defendants received written notice from CE terminating the franchise agreement. *See* Adams Dep. 131:14-133:15. Defendants also used Cici's exact marks, not just similar marks, and held their restaurant out as a Cici's-brand restaurant after Defendants received written notice from CE terminating the franchise agreement. *See id.* Thus, Plaintiffs have established a likelihood of consumer confusion between licensed Cici's-brand restaurants and Defendants' restaurant. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir.2008) (holding that district court does not need to analyze all "digits of confusion" when the alleged infringer is using exact marks of plaintiff); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."); *Petro Franchise Sys., LLC v. All Am. Props., Inc.*, 607 F.Supp.2d 781, 788-89

12

(W.D. Tex. 2009) (holding that franchisees' unauthorized use of franchisor's marks establishes likelihood of confusion).

Accordingly, the only element in dispute is whether Plaintiffs consented to Defendants' use of the Cici's Marks. Plaintiffs initially authorized Defendants to use the Cici's Marks in connection with the operation of their restaurant in Texarkana. But the franchise agreement expressly provided that Defendants must *immediately* cease use of the Cici's Marks upon termination of the agreement. Br. Supp. Ex. J § XVIII ("Upon expiration if this Agreement . . . Franchisee shall immediately cease to operate the Restaurant . . . [and] cease to use all signs, marketing materials, displays, stationary, forms and any other articles which display the Marks."). CE terminated the franchise agreement when TLT failed to make the required payments and Adams failed to cure TLT's default, yet Defendants continued using the Cici's Marks for at least several weeks. Br. Supp. 10-11.

Defendants argue they had consent because they were engaged in negotiations with Plaintiffs.[2] Resp. 4. Specifically, Defendants rely on the evidence

---

[2] Defendants also mention elsewhere in their brief in that Plaintiffs "continued sending proprietary information to Defendants via email through the date of closing of Store #699 and beyond." Taking this fact in the light most favorable to Defendants, this still does not raise a genuine fact issue as to whether Plaintiffs consented to Defendants' continued use of the Cici's Marks. *See TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 770 (N.D. Tex. 2009) (holding that even if TGIF continued helping defendants with operations, by doing so, TGIF has not waived its termination of the franchise agreements or consented to defendants' continued use of its marks).

13

of their negotiations with Plaintiffs' counsel. *Id.* But this evidence is inadmissible. And there is no admissible evidence that Plaintiffs stayed or rescinded the termination notice at any time. Therefore, Plaintiffs have established beyond peradventure that TLT did not have Plaintiffs' consent to use the Cici's Marks after CE terminated the franchise agreement. *See TGI Friday's Inc. v. Great NW Restaurant, Inc.*, 652 F. Supp. 2d. 763, 768 (N.D. Tex. 2009) (Fitzwater, J.).

Plaintiffs have also established beyond peradventure that Defendants' Lanham Act violations were willful. A defendant acts willfully "'if he knows his actions constitute an infringement.'" *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 748 (N.D. Tex. 2005) (quoting *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir.1988)). And some courts have found willful conduct where a defendant acts with "'reckless disregard for, or [with] willful blindness'" toward a trademark owner's rights. *Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Here, Adams admitted that, after CE terminated the franchise agreement, TLT continued to operate the Texarkana restaurant as if it was an authorized Cici's-brand restaurant—including using the Cici's Marks—when it was not. Adams Dep. 131:14-133:15. Indeed, Defendants did not remove the Cici's Marks from their restaurant until December 2021, which is after the Court entered the stipulated preliminary injunction order on October 7, 2021. *Id.* 134:5-135:4. This evidence shows Defendants' violations were willful.

C.   Defendants are not entitled to equitable estoppel.

Defendants argue Plaintiffs should be estopped from recovering on their claims because Plaintiffs led them to believe they could continue operations as a Cici's-brand restaurant, even after the termination of the franchise agreement. Under Texas law,³ the elements of equitable estoppel are "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the misrepresentations." *Gulbenkian v. Penn*, 252 S.W.2d 929 (Tex. 1952); *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 529 (Tex. App.—Houston 2014). Again, Defendants rely on the evidence of their negotiations with Plaintiffs' counsel—which is inadmissible. And even if the Court considered the evidence, it would negate Defendants' arguments. The email communications from Plaintiffs' counsel repeatedly and unequivocally state that the termination remains in effect until a new written agreement is signed by all parties. Adams also admitted at his deposition that Plaintiffs' counsel never made any oral representation rescinding or suspending the termination, Adams Dep. 112:16-114:22, and Adams admitted he knew the termination was in effect until the parties reached a new agreement. *Id.* 111:15-113:15. Therefore, Defendants are not entitled to equitable estoppel.

---

³ Defendants' reliance on Wisconsin and Connecticut state law is inapposite.

Plaintiffs have met their burden and the Court should grant summary judgment in Plaintiffs' favor on their trademark infringement and unfair competition claims.

### IV. Relief Requested

Plaintiffs should be awarded $16,982.36 in past due royalty fees and $23,528.41 in outstanding product payments or a total of **$40,510.77** in past due amounts. The franchise agreement also established a formula for calculating liquidated damages in the event of premature termination. *See* Br. Supp. Ex. J § XVIII.N ("two years of weekly royalty fees based on defendants' average weekly royalty fees during the year proceeding termination, discounted by 25 percent"). The Court should find this calculation reasonable and award Plaintiffs **$43,914** in liquidated damages.

Plaintiffs are also entitled to collect the franchise agreement's agreed-upon royalty of four percent applied against defendants' month of post-termination sales, which totals $2,238.48. Under the Lanham Act, appropriate damages include "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Fifth Circuit has previously held that "royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." *Holiday Inns, Inc. v. Airport Holiday Corp.*, 493 F. Supp. 1025, 1028 (N.D. Tex. 1980), aff'd sub nom. *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931 (5th Cir. 1982) (citations omitted).

Further, because Plaintiffs established that Defendants acts were willful (i.e., intentional), Plaintiffs are also entitled to treble damages.

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of intentionally using a mark or designation...in connection with the sale, offering for sale, or distribution of goods or services

*Id.* § 1117(b) (authorizing treble damages for use of counterfeit marks); *see also Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, 2018 WL 1806500 (N.D. Tex. Apr. 17, 2018) (Boyle, J.) (citing 15 U.S.C. § 1117(b)) ("Proving a defendant intentionally counterfeited or used a counterfeited mark entitles the plaintiff to treble damages."); *MetroPCS v. Mohammed*, 2017 WL 2590108 (N.D. Tex. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL 2579040 (N.D. Tex. June 14, 2017) (Lindsay, J.) ("[O]n the basis of Defendants' willful infringement and failure to appear established in this case, Plaintiff should be awarded treble damages"). Therefore, the total damages under the Lanham Act should be **$6,715.49** ($2,238.48 multiplied by three).

The total monetary aware is therefore **$91, 140.26**. Lastly, the Plaintiffs are entitled to a judgment converting the parties stipulated preliminary injunction into a permanent injunction.

## V. Recommendation

For the reasons stated above, Plaintiffs' Motion to Strike is GRANTED. And the Court should GRANT Plaintiffs' motion for summary judgment and the relief requested.

**SO ORDERED**.

November 18, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).